**Clio KETTELHUT and Marvin Kettelhut, d/b/a Kettelhut Builders, Plaintiffs,**

v.

**Bill PORTER, Nelson Laster, Frank Resimont, Jack Cecil, David Pyron, Bennie Ross, Ted Young and Paul E. Wilson, Defendants.**

**No. FS–75–129–C.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

June 28, 1977.

Robert S. Blatt, Fort Smith, Ark., for plaintiffs.

Edgar E. Bethell of Bethell, Callaway & Robertson, Fort Smith, Ark., for defendants.

OPINION

JOHN E. MILLER, Senior District Judge.

There is before the Court Motion of defendants for Summary Judgment filed April 4, 1977 alleging that the Complaint and Amendment thereto of plaintiffs do not raise a single material issue of fact to be heard by this court.

On April 28, 1977, plaintiffs filed a response to the Motion and alleged that the Motion is based "on an erroneous allegation on the doctrine of res judicata", and further that the issues that were resolved could have been resolved in the State Court and are not the same issues that will be heard in the present case because the City of Clarksville could not have been sued in tort in State Court nor could tort damages have been obtained in State Court against the City of Clarksville.

In order for anyone to acquire a full understanding of the facts, it is necessary for the court to refer to the pleadings in the case in the order in which they were filed.

The original complaint was filed in this court on August 27, 1975, by the plaintiffs, Clio Kettelhut and Marvin Kettelhut d/b/a Kettelhut Builders, against Bill Porter, the Mayor of the City of Clarksville, Arkansas, Nelson Laster, Frank Resimont, Jack Cecil, David Pyron, Bennie Ross and Ted Young, the duly elected, qualified and acting members of the City Council of the City of Clarksville, Arkansas; that Paul E. Wilson was the duly appointed, qualified and acting City Inspector of the City of Clarksville.

All of the above mentioned defendants are citizens and residents of Johnson County and the City of Clarksville. In that complaint, the plaintiffs alleged that the plaintiffs, on or about the 29th day of December, 1960, caused the lands involved herein to be surveyed and platted into lots, blocks, streets and alleys. And after dedicating all the public ways, the City Council by Ordinance, approved and accepted same into the City as Thompson Heights Addition.

That on the 11th day of June, 1974, plaintiffs, having made application for a building permit on lot 14, 902 Olive Street, was refused the permit with the explanation that the City Council had ordered the City Inspector to issue no permits in Thompson Heights Addition.

Jurisdiction of the Court is invoked under 28 U.S.C.A. Section 1343.

On September 17, 1975, the plaintiffs filed an "Amended and Substituted Complaint" in which Complaint they reiterated the allegations in the original Complaint relative to the refusal of the City Council to allow permit for building on lot 14, 902 Olive Street, and in addition to referring to that allegation, they alleged that on the 10th day of July, 1973, plaintiffs applied for a building permit on 900, 808, and 902 Olive Street, which permits were also refused, as well as was the application on lot 14, at 902 Olive Street.

In paragraph VI of the Amended and Substituted Complaint, the plaintiffs alleged, "the plaintiffs had followed the applicable laws for subdivision development, had complied with all of the prerequisites with which they are familiar for the purpose of obtaining the necessary building permits, but the defendants willfully, knowingly, purposely and with malice, while acting under color of official authority refused to issue the requested building permits and advised plaintiffs and other prospective builders of lots from plaintiffs that no more building permits in said subdivision would be issued. That the defendants willfully, wantonly and under color of law continuously refused to issue requested building permits until plaintiffs obtained an Injunc-

tion in State Court on June 19, 1975, enjoining defendants from refusing the requested building permits. That the willful, knowing, wanton conduct on the part of the defendants constituted a taking of plaintiff's property without due process of law in violation of the Constitution of the United States. The defendants, by their conduct, while acting under color of official authority knew or should have known that their action would result in depriving the plaintiffs of a right or privilege secured by the Constitution of the United States."

In paragraph VII the plaintiffs alleged that the conduct of the defendants was malicious, willful and wanton and in gross disregard for the plaintiffs, and the defendants were acting in bad faith and for an improper motive and that the plaintiffs are entitled to punitive damages in the amount of One Hundred Sixty Thousand and No/100 ($160,000.00) Dollars.

On October 20, 1975, the defendants filed their Answer in which they alleged that the State Court action referred to in plaintiff's Amended and Substituted Complaint was an action "involving the identical plaintiffs and defendants in this matter; that the basis for relief in these two law suits is identical; that the action in State Court was a complete and final adjudication of the rights and obligations of the parties herein with regard to the subject matter of this complaint; that the final Order issued by said State Court is and should be held res judicata to the maintenance of this action by the plaintiffs."

The defendants further state "that each and every act performed by these defendants set forth in the complaint of plaintiffs was performed by these defendants in their capacity as public officials, and each and every act was in the scope of their authority as public officials and as such these defendants are immune from liability for such actions."

In their Petition for Injunction filed October 11, 1974, many allegations contained in the Complaint heretofore referred to are repeated and then it is alleged by plaintiffs:

## V.

"That the conduct on the part of the defendants constitutes the taking of plaintiffs' property without due process of law and is a violation of the Constitution of the United States and the Constitution of the State of Arkansas.

## VI.

The defendants should now be enjoined from refusing to issue building permits to plaintiffs within the said Thompson Heights Addition and should be enjoined and restrained from advising prospective purchasers that no more permits for building within said addition shall be issued."

The prayer of the petition was that the defendants and each of them be enjoined from refusing to issue building permits to the plaintiffs; from advising prospective purchasers that no permits will be issued for building within the Thompson Heights Addition; and "for all of their costs herein expended, including reasonable attorney's fee for their attorneys and for all other proper and equitable relief."

The Petition for Injunction was granted after full pretrial discovery which included all of the proceedings had by the defendants in their official capacity, the contentions of plaintiffs in the complaint and all other actions relative to the refusal of the building permits and the court, after a full and complete trial in the Chancery Court on June 19, 1975 issued the Injunction.[1]

It is a basic and fundamental concept of our system of justice that every man is entitled to a day in court to seek redress of

---

1.  IN THE CHANCERY COURT OF JOHNSON COUNTY, ARKANSAS
CLIO KETTELHUT AND MARVIN KETTELHUT d/b/a KETTELHUT BUILDERS
                                    PLAINTIFFS
VS.      No. D–74–124
CITY OF CLARKSVILLE, ARKANSAS, ETAL
                                    DEFENDANTS
INJUNCTION

Now on this 19th day of June, 1975, this cause is presented to the Court on the Petition of the Plaintiffs for an Injunction, the plaintiffs appearing by the attorneys, Williams & Gardner, and the Defendants appearing by their Attorney, Edward Patterson, whereupon Counsel for the respective parties advised the Court that settlement of all the issues herein had been reached between them and that a Consent Order for a Permanent Injunction should be entered, from all of which the Court finds:

That the Thompson Heights Addition is a regularly organized addition, of which Block "A" has been approved and accepted by Ordinance into the City of Clarksville, Arkansas and the remainder of said Addition has been approved and accepted by acquiescence; that the streets and rights-of-way have been properly dedicated and accepted; that plaintiffs are building contractors subject to the laws and regulations of the building codes adopted by the City of Clarksville and, upon compliance with the said building and inspection codes and regulations to which all builders in similar or like conditions and subjected, plaintiffs are entitled to building permits; and that defendants and their successors in office should be permanently enjoined from refusing to issue building permits to plaintiffs generally or for the construction of homes or buildings in the Thompson Heights Addition provided the applicants comply with and meet the building code requirements and/or the application requirements to which all builders and applicants are subjected.

IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that Defendants be and they and their successors in office are hereby enjoined and restrained from refusing to issue building permits to plaintiffs for the construction of residences or other buildings within the City of Clarksville provided that plaintiffs' applications meet the requirements and specifications of the building code, regulations, and procedures adopted by the City of Clarksville as same are applied to all other building contractors and builders submitting applications for the same or like purposes; and,

IT IS FURTHER BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that defendants be and they and their successors in office are hereby enjoined and restrained from refusing to issue building permits to any regular licensed contractor or other making application on the regular application blanks for the construction of building and/or residences within the Thompson Heights Addition to the City of Clarksville, Arkansas; and provided further that Defendants and their successors in office and their agents and employees are enjoined and restrained from advising or informing any applicant that building permits will not be issued for the construction of buildings within the Thompson Heights Addition; and the costs of this action are adjudged against the Defendants.

(Signed) RICHARD MOBLEY
Chancellor
Johnson County Chancery Court

his grievances against another. Coupled with and a part of this intrinsic right of access to the courts is the doctrine of res judicata, that a matter once judicially decided is finally decided.

The chief complaint of the plaintiffs is the alleged refusal of the defendants to issue building permits to the plaintiffs for the construction on certain lots located in the City of Clarksville, Arkansas. In paragraph V of the complaint, they specifically alleged that the last such instance of the defendants' refusal to issue building permits occurred on June 11, 1974 when a written request for a building permit on lot 14, 902 Olive Street, was requested and refused. If the plaintiffs were aggrieved and damaged by the action of the defendants in refusing to issue the building permit as requested, they are entitled to have their grievance and allegations determined by a court. In paragraph VI of their complaint, they brought this grievance before a court of law by filing on October 11, 1974 in the Chancery Court of Johnson County, Arkansas a Petition for Injunction against defendants which was granted (certified copy of the Injunction has heretofore been set forth as footnote No. 1). The Chancery Court had before it certified copy of the pleadings and all filings and proceedings in the present case had prior to date of decree and as heretofore stated, the court on June 19, 1975 entered a permanent Injunction against the defendants. An examination of the Petition and the Amended and Substituted complaint of plaintiffs will show that the two pleadings are in all material respects identical. The right to recover damages claimed in their complaints discloses that the real complaint was based upon the official action of the City Council and was not the result of any personal feeling of any of the members thereof against plaintiffs.

Rule 56, R.C.P. provides the procedure to be followed in presenting such Motion. In Section (c) it is provided:

"The Judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to Judgment as a matter of law."

The defendants have alleged in the Motion, "that the complaint of plaintiffs does not raise a single material issue of fact to be heard by this court and they pray that the complaint be dismissed and that they recover their costs and all other proper relief."

In response thereto, plaintiff has alleged that the defendants' Motion is based "on an erroneous allegation of the doctrine of res judicata".

On October 14, 1974, the plaintiffs propounded to the City of Clarksville and the other named defendants certain Interrogatories which Interrogatories were answered by the defendants and the City on October 21, 1974.

By Interrogatory No. 1, plaintiffs asked:

"What is the reason for the refusal to grant a building permit to Kettelhut Builders for a building to be located at 902 Olive Drive, the date of application being the 11th day of June, 1974 and the denial dated June 13, 1974?"

The answer given by the City and its officers was as follows:

"Order and directive from the City Council of Clarksville requiring plaintiffs to install adequate drainage systems on Olive Drive in the City of Clarksville which abuts property involved in this lawsuit was not performed by plaintiffs."

Question 4 reads:

"What is the reason and the authority for advising prospective purchasers that no permit will be issued for the construction of a residence in Thompson Heights Addition?"

The answer is as follows:

"Because finished ditches have not been covered, do not provide adequate drainage and present health problems in its present condition and support a dangerous situation for the many children in the neighborhood."

Accompanying the answers to these Interrogatories, the defendants attached certified copies of the ordinance and all regula-

tions and rules pertaining to buildings and to improvements and a perusal of the rules affords a complete answer and justification for the refusal by the City Council of a building permit at that particular time.

When the Chancery Court considered the the Petition for Injunction, the parties appeared by their attorneys and as stated by the court, stipulated: "Whereupon counsel for the prospective parties advised the court that settlement of all the issues herein had been reached between them and that a consent Order for a permanent Injunction should be entered."

It will be noted that all the actions of defendants complained of by plaintiffs occurred prior to the filing, April 4, 1977, of the Motion for Summary Judgment.

On June 9, 1977, the parties, through their attorneys, filed the following Stipulation of Facts:

1. "The copies of pleadings attached to the brief in support of the Motion for Summary Judgment filed by defendants are true and correct copies of the same.

2. The real property involved in the litigation in the Chancery Court of Johnson County, Arkansas in Case No. E–74–124 is the same real property involved in the case presently pending before the court.

3. The parties involved in the litigation in the Chancery Court of Johnson County, Arkansas in case No. E–74–124 are the same as the parties in the case presently before this court with the exception that the City of Clarksville, Arkansas is not a defendant in this case.

4. All of the alleged acts of the defendants which the plaintiffs allege caused them damage and on which the plaintiffs would offer proof in the present case occurred prior to June 19, 1975, the date on which the Injunction in the case in the Chancery Court of Johnson County, Arkansas (referred to in paragraph 3 of the stipulation) was entered."

A careful and full examination of the record and all exhibits thereto, the briefs and the contentions of the parties reveals that there is no genuine issue as to any material fact or facts, and the court so finds.

In *Robertson v. Evans,* 180 Ark. 420, 21 S.W.2d 610, the court at page 422 of 180 Ark., at page 611 of 21 S.W.2d said:

"The test in determining a plea of res judicata is not alone whether the matters presented in a subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily within the issues and might have been litigated in the former suit. *Gosnell Special School District No. 6 v. Baggett,* 172 Ark. 681, 290 S.W. 577; *Cole Furniture Co. v. Jackson,* 174 Ark. 527, 295 S.W. 970; *Prewett v. Waterworks Imp. Dist. No. 1,* 176 Ark. 1166, 5 S.W.2d 735.

In *Olmstead v. Rosedale Building & Supply et al.,* 229 Ark. 61, 313 S.W.2d 235, the court beginning at bottom of page 63 of 229 Ark., at page 237 of 313 S.W.2d said:

"This presents a question upon which there is a sharp division of authority, particularly where the second suit is one at law for damages. A statement by the textwriter in 28 Am.Jur., Injunctions, Sec. 309, indicates that most courts favor the proposition that, where damages are not sought as incidental to an injunction, the decree granting the injunction is not a bar to an action at law for past damages on account of the thing enjoined. However, other courts hold that an injunction decree is a bar to an action at law for past damages regardless of whether the plaintiff in the injunction suit pleaded damages, and regardless of whether there was an attempt to recover damages in that suit. The textwriter's statement as to the majority rule is based upon an annotation in 14 A.L.R. 543. A more recent annotation on the question in 26 A.L.R.2d 446 indicates that most courts, including our own, hold that a decree deciding an injunction suit is res judicata in a subsequent action for damages of all issues determined in the injunction proceeding. Our own cases go further and hold that the decree in the injunction suit is also res judicata of all issues in a subsequent action for damages which could have been interposed in the injunction suit.

"In *Gosnell Special School Dist. v. Baggett*, 172 Ark. 681, 290 S.W. 577, this court reversed and dismissed a circuit court judgment awarding damages to plaintiffs for breach of their contract to teach school and sustained the defense of res judicata interposed by the school district by virtue of a former injunction suit involving the same contract. In so doing, the court said it was unimportant that the plaintiffs did not ask the affirmative relief of damages for breach of the contract in the injunction suit and reaffirmed the following statement from *Taylor v. King*, 135 Ark. 43, 204 S.W. 614: 'The rule has been often announced in this court that the judgment or decree of a court of competent jurisdiction operates as a bar to all defenses, either legal or equitable, which were interposed or which could have been interposed in the former suit.' The court also approved the following statement in 15 R.C.L. Judgments, Sec. 439: 'If it is doubtful whether a second suit is for the same cause of action as the first, it has been said to be a proper test to consider whether the same evidence would sustain both. If the same evidence would sustain both, the two actions are considered the same, and the judgment in the former is a bar to the subsequent action, although the two actions are different in form.' Many cases from other jurisdictions are cited in support of this general rule in 30A AM.Jur., Judgments, Sec. 365."

The court also specifically approved *Robertson v. Evans, supra.*

In *Gyngard v. Garfer*, 238 Ark. 415, 382 S.W.2d 369, the court at page 416 of 238 Ark., at pages 369–370 of 382 S.W.2d said:

"A careful study of our former decisions leads us to conclude that the judgment of the trial court must be affirmed. In *Robertson v. Evans*, 180 Ark. 420, 21 S.W.2d 610, we affirmed a decree in chancery holding the former suit to redeem land and declare a deed a mortgage to be res judicata of a subsequent suit by the grantor to recover rents and damages for waste by defendants, although the grantor failed to assert such claim in the original suit. We there said:

'The test in determining a plea of res judicata is not alone whether the matters presented in a subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily within the issues and might have been litigated in the former suit. *Gosnell Special School Dist. No. 6 v. Baggett*, 172 Ark. 681, 290 S.W. 577; *Cole Furniture Co. v. Jackson*, 174 Ark. 527, 295 S.W. 970; *Prewett v. Waterworks Imp. Dist. No. 1*, 176 Ark. 1166, 5 S.W.2d 735'.

The same issue of res judicata was involved in the case of *Olmstead v. Rosedale Bldg. & Supply, et al.*, 229 Ark. 61, 313 S.W.2d 235, in which this Court affirmed the holding in the *Robertson* case quoting extensively therefrom on page 65 of the Arkansas Reports. For other decisions to the same effect see *Crump v. Loggains*, 212 Ark. 394, 205 S.W.2d 846 and *Timmons v. Brannan*, 225 Ark. 220, 280 S.W.2d 393."

In *Howe v. Brouse*, 8th Cir., 422 F.2d 347, the United States Court of Appeals for the Eighth Circuit, after quoting the facts in the case said at page 348:

"Judge Collinson in his memorandum opinion (not reported) noted the decision of the Missouri Supreme Court and stated that it was a correct application of the doctrine of judicial immunity. However, Judge Collinson rested his decision on the ground that having fully litigated this action in the state courts, the doctrine of res judicata applied and was a complete defense to Howe's attempt to institute this action in the federal courts. The judgment of the Missouri Supreme Court was conclusive on all matters which were or might have been litigated in that action. *Norwood v. Parenteau*, 228 F.2d 148 (8th Cir. 1955), cert. denied, 351 U.S. 955, 76 S.Ct. 852, 100 L.Ed. 1478 (1956) and *Frazier v. East Baton Rouge Parish School Board*, 363 F.2d 861 (5th Cir. 1966).

Under the facts reflected by the record and as found by the court, the court is convinced that the Motion of defendants for Summary Judgment should be sustained and Judgment is being entered dismissing

the complaint of the plaintiffs and awarding costs to defendants.